<u>NOT FOR PUBLICATION</u>

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

_____

| | | |
|---|---|---|
| WALTER GOMEZ, | : | Hon. Faith S. Hochberg |
| | : | |
| Plaintiff, | : | Civil Action No. 10-1233 |
| | : | |
| v. | : | **<u>OPINION & ORDER</u>** |
| | : | |
| MICHAEL J. ASTRUE, | : | Dated: December 15, 2010 |
| COMMISSIONER OF SOCIAL SECURITY, | : | |
| | : | |
| Defendant. | : | |

_____

**<u>HOCHBERG, District Judge:</u>**

**I.      INTRODUCTION**

This matter comes before the Court upon Plaintiff Walter Gomez's motion to review a final determination of the Commissioner of the Social Security Administration (the "Commissioner") pursuant to the Social Security Act, as amended, 42 U.S.C. § 405(g). The motion has been decided upon the written submissions of the parties pursuant to Federal Rule of Civil Procedure 78.

**II.     PROCEDURAL HISTORY**

Plaintiff filed an application for disability insurance benefits on August 9, 2004, alleging that he was disabled as of February 4, 2004. Plaintiff's date of last insured was December 31, 2008. The Commissioner denied the application in a final order dated July 28, 2006, which affirmed the March 1, 2006 opinion of ALJ Dennis O'Leary. Plaintiff appealed that order to the District Court, Judge Greenaway presiding, which remanded the case back to the

1

Commissioner for further proceedings on September 5, 2008.  Judge Greenaway held that the ALJ had failed to articulate sufficiently (1) his reasons for identifying listing 1.04(c) at step three as the relevant listing, and (2) how he reconciled conflicting probative evidence in making his credibility determination regarding plaintiff's subjective complaints of pain.  Although plaintiff had argued that the ALJ's residual functional capacity determination was not supported by substantial evidence, Judge Greenaway did not reach that question.

Following the remand, the case was heard by ALJ O'Leary in combination with a second application for benefits for the period following the Commissioner's decision.  At the hearing before the ALJ, plaintiff requested that his applications be amended to request a closed period of benefits from February 4, 2004 until July 21, 2008.  Plaintiff requested this amendment because, as discussed more fully below, he returned to work on July 21, 2008.  The ALJ denied plaintiff's amended application in an opinion dated March 4, 2009.  Plaintiff now appeals that determination before this Court.

## III.   FACTUAL BACKGROUND

### A.   Plaintiff's Medical and Vocational History

Plaintiff Walter Gomez is a 34-year-old male, born on August 8, 1976.  At all relevant times, plaintiff has had a GED.  (Tr. 58.)  He received an Associate's Degree in respiratory therapy through a joint program with Union County College and The University of Medicine and Dentistry of New Jersey in March 2008.  He has been employed as a respiratory therapist since July 21, 2008.  Until the onset of his alleged disability, he was employed as a forklift driver at IKEA.  That job frequently required lifting large and heavy objects, such as mattresses and sofas.  On February 4, 2008, plaintiff injured his back while operating a forklift.

2

Two years prior to this accident, plaintiff had injured his back and undergone spinal surgery to repair it.  He also underwent weight-loss surgery in 2005.

A radiological report by Dr. John McCormick dated March 5, 2004 diagnosed plaintiff with (1) "right paracentral recurrent or residual disc herniation L4-5 producing a right ventral dural deformity resulting in moderate central spinal stenosis" and (2) "[r]ecurrent or residual right paracentral disc herniation L5-S1 impinging upon the right S1 nerve root sheath with enhancing ventral epidural scar."  (Tr. 127-28.)

Plaintiff visited Dr. Michael Rieber, an orthopedic surgeon, on three occasions: March 15, April 5, and April 14, 2004.  Dr. Reiber reported that plaintiff suffered from back pain.  He could forward flex barely to the knee and was able to stand on his heels and toes.  On exam, plaintiff appeared neurologically intact with good strength and reflexes.  Dr. Rieber prescribed conservative treatment and pain medication.  He stated on March 15, 2004 that plaintiff "certainly [was] okay to do light duty as long as he [was] not doing any kind of heavy lifting, pushing or pulling, or twisting."  (Tr. 129-31.)

Dr. Kenneth Kopacz reported on April 26, 2004 that plaintiff suffered from pain in his back without "much in the way of radicular complaints," and he recommended epidural steroid injections to be followed by physical therapy.  He noted that plaintiff exhibited good strength and reflexes.  (Tr. 132-33.)  On several follow-up visits, Dr. Kopacz recommended continued treatment with pain medication and physical therapy.

Dr. Richard Nachwalter examined plaintiff on June 17, 2004.  He found that plaintiff's motor strength was 5/5 throughout both lower extremities and that he could rise on his heels and his toes.  He noted that plaintiff had a "fair amount of back pain" and recommended an

3

epidural injection.  If that failed, Dr. Nachwalter suggested that plaintiff could "either live with his symptoms or pursue surgery in hopes that his pain is improved."  He diagnosed plaintiff with recurrent disc herniation and lumbar degenerative disc disease.  (Tr. 137-39.)

At Dr. Kopacz's request, plaintiff underwent a functional capacity assessment with Timothy O'Kay, a physical therapist, on August 10, 2004.  The assessment concluded that in an eight-hour workday, plaintiff could sit for 4 to 5 hours, up to 60 minutes at a time, stand for 8 hours, up to 60 minutes at a time, and walk for 3 to 4 hours occasionally.  (Tr. 100.)  The assessment was "conditionally valid" due to a perceived lack of effort by plaintiff.  (Tr. 100, 107.)  Dr. Kopacz concluded from the results that plaintiff could engage in sedentary activity and recommended that he be "retrained and vocational [sic] rehabilitated somehow, to train him in a position that he is more suited for."  (Tr. 107.)

In the file is a physical residual functional capacity assessment dated September 14, 2004 by a state agency medical consultant identified on the report as J. Pringle.  It concluded that plaintiff was able to occasionally lift and carry 10 pounds, frequently lift and carry less than 10 pounds, stand or walk at least 2 hours in an 8-hour day, sit about 6 hours in an 8-hour day, and push and pull without limitation.  It identified additional postural limitations: plaintiff could climb stairs, stoop, crouch, and crawl occasionally; and he could not kneel.  No other physical limitations were identified in the assessment.  (Tr. 118-25.)  The assessment was affirmed on reconsideration on November 30, 2004.  (Tr. 22-23.)

Plaintiff began vocational training through the New Jersey Division of Vocational Rehabilitation ("DVR").  From January 2005 through March 2008, plaintiff was enrolled full-time in a joint program in respiratory therapy with Union County College and the University of

4

Medicine and Dentistry of New Jersey.  He attended class 12 hours per week and did not receive

any ADA accommodations.  Attending class involved sitting for 1-3 hours at a time, with

occasional breaks, and a two-hour lab, during which plaintiff remained standing for the entire

period.  He also had to complete outside reading assignments at home.

On October 27, 2006, Dr. Kopacz reported that plaintiff was pursuing Social

Security disability benefits on the belief that he could not perform even sedentary work; Dr.

Kopacz noted that he was "not sure if that is directly correct, given his pain complaints and

ability to go to school."  He prescribed Ultram for pain relief, which plaintiff "use[d] sparingly."

(Tr. 312.)

Dr. Morris Horwitz performed a workers' compensation exam on plaintiff in

November 2004.  He reported "marked curve flattening involving the lumbodorsal and lumbar

curves extending through the sacrum" and "a loss of the lumbar lordosis."  He noted "marked

tenderness at L4-L5 and S1" and that "[t]runk motion is productive of lumbar and sacroiliac

pain."  Plaintiff's "[t]runk flexion lack[ed] 45 degrees, extension lack[ed] 30 degrees, bending

bilaterally lack[ed] 35 degrees and twisting bilaterally lack[ed] 35 degrees."  Dr. Horwitz

diagnosed plaintiff with "[r]ecurrent HNP at the L4-L5 and L5-S1 levels" and "[r]esiduals of

strains of lumbosacral region superimposed on post operative state."  (Tr. 149-50.)

Dr. Steven G. Dorsky examined plaintiff on April 21, 2006.  He found "multiple

examples of both exaggerated pain as well as non-organic findings."  He diagnosed plaintiff with

advanced congenital spinal stenosis, which would probably require surgery some time in the

future.  He opined that plaintiff was "probably capable of working in a light duty job, although,

the overall prognosis for the patient is quite poor."  (Tr. 287-89.)

5

Dr. Allen S. Glushakow of the New Jersey Department of Labor and Workforce Development prepared an assessment of plaintiff dated February 12, 2007 at the Commissioner's request. He noted several non-organic findings with respect to plaintiff's claimed back pain. For example, when asked to touch his toes from a standing position, plaintiff would only flex to 45 degrees, but when he was sat down and distracted, plaintiff could flex to 80 degrees. (Tr. 331-32.)

On file is a residual functional capacity assessment dated March 27, 2007 prepared by a state agency medical consultant identified on the report as Eden Atienza. It concludes that plaintiff had the capacity to lift 20 pounds occasionally and 10 pounds frequently, stand or walk at least 2 hours in an 8-hour day, sit for about 6 hours in an 8-hour day, and push and pull without limitation. The report found certain postural limitations: plaintiff could climb ramps or stairs, balance, stoop, kneel, crouch, and crawl occasionally; he could not climb ropes, ladders, or scaffolds. No further limitations were found. (Tr. 335-42.)

Dr. Rashel Potashnik performed an orthopedic evaluation of plaintiff on July 5, 2007. He found that plaintiff was "not in acute distress" and that his "[g]ait was normal without assistive device." He found that plaintiff suffered from residual right lumbar radiculopathy and was "limited in activities requiring repetitive bending, heavy lifting, and prolonged sitting." (Tr. 345-46.)

**B.    The Disability Standard and the ALJ's Decision**

1.    <u>The Statutory Standard for a Finding of Disability</u>

An individual is considered disabled under the Social Security Act if he is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or

mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A). A physical or mental impairment is defined as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques."  42 U.S.C. § 423(d)(3).  An individual will be deemed disabled "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ."  42 U.S.C. § 423(d)(2)(A).

To determine whether a claimant meets this definition of disability, the Commissioner applies the following sequential analysis:

Step One: Substantial Gainful Activity.  The Commissioner first considers whether the claimant is presently employed, and whether that employment is substantial gainful activity.[1]  If the claimant is currently engaged in substantial gainful activity, the claimant will be found not disabled without consideration of his medical condition.  20 C.F.R. § 416.920(b).

Step Two: Severe Impairment.  If the claimant is not engaged in substantial gainful activity, he must then demonstrate that he suffers from a severe impairment or combination of impairments considered severe.  A "severe impairment" is one "which significantly limits [the claimant's] physical or mental ability to do basic work activities."  If the claimant does not demonstrate a severe impairment, he will be found not disabled.  20 C.F.R. §

_____

[1]  "Substantial" work involves significant physical and mental activities.  "Gainful" work is performed for pay or profit.  20 C.F.R. § 416.972.

416.920(c).

Step Three: Listed Impairment.  If the claimant demonstrates a severe impairment, the Commissioner will then determine whether the impairment meets or equals an impairment listed on the Listing of Impairments set forth in 20 C.F.R. § 404, subpt. P, app. 1.  If the claimant has such an impairment, he is found disabled.  If not, the Commissioner proceeds to the fourth step.  20 C.F.R. § 416.920(d).

Step Four: Residual Functional Capacity.  At Step Four, the Commissioner determines whether, despite his impairment, the claimant retains the RFC[2] to perform his past relevant work.  If so, the claimant is found not disabled and the inquiry proceeds no further.  If not, the Commissioner proceeds to the fifth step.  20 C.F.R. § 416.920(e)-(f).

Step Five: Other Work.  If the claimant is unable to perform his past work, the Commissioner considers the individual's RFC, age, education, and past work experience to determine if he is able to make an adjustment to other work.  If he cannot do so, the claimant is found disabled.  20 C.F.R. § 416.920(g).

This five-step analysis involves shifting burdens of proof.  *Wallace v. Sec'y of Health & Human Servs.*, 722 F.2d 1150, 1153 (3d Cir. 1983).  The claimant bears the burden of persuasion through the first four steps.  *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987).  If the analysis reaches the fifth step, however, the Commissioner bears the burden of proving that the claimant is able to perform other work available in the national economy.  *Id.*

---

[2] RFC designates the claimant's ability to work on a sustained basis despite his physical or mental limitations.  The RFC determination is not a decision as to whether a claimant is disabled, but is used as the basis for determining the particular types of work a claimant may be able to perform despite his impairment(s).  *See* 20 C.F.R. § 416.945 (2010).

2.      The ALJ's Decision

At step one, the ALJ determined that plaintiff had not been gainfully employed between February 4, 2004 through July 2008, when he returned to work.  At step two, the ALJ found that plaintiff suffered from the following severe impairment: "lumbar disc herniation status post discectomy." (Tr. 204.)

At step three, the ALJ determined that plaintiff's impairment did not match the criteria set forth in listing 1.04 (disorders of the spine).  He noted, "The medical evidence does not establish the requisite evidence of nerve root compression, spinal arachnoiditis or lumbar spinal stenosis under listing 1.04."  He discussed the findings of Drs. Kopacz, Nachwalter, and Potashnik, who found that plaintiff, *inter alia*, could walk without an assistive device and had normal muscle strength.  The ALJ further noted that plaintiff could drive and attend school.  (Tr. 204.)

At step four, the ALJ concluded that plaintiff had the residual functional capacity ("RFC") to perform the full range of sedentary work.  As such, he was unable to perform his past relevant work, which required lifting heavy objects on a regular basis.  (Tr. 205-11.)  At step five, however, the ALJ found that, in light of plaintiff's age, education, work experience, and RFC, a finding of "not disabled" was required by Medical-Vocational Rule 201.27.  (Tr. 212.)

IV.    DISCUSSION

A.    Standard Of Review

This Court reviews the decision of the Commissioner to determine whether there is substantial evidence in the administrative record supporting his decision.  42 U.S.C. § 405(g); *Brown v. Bowen*, 845 F.2d 1211, 1213 (3d Cir. 1988).  Substantial evidence is "more than a mere

9

scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate."

*Plummer v. Apfel*, 186 F.3d 422, 427 (3d Cir. 1999) (quoting *Richardson v. Perales*, 402 U.S.

389, 401 (1971)).  If there is substantial evidence supporting the Commissioner's finding, this

Court must uphold the decision even if it might have reasonably made a different finding based

on the record.  *Simmonds v. Hecker*, 807 F.2d 54, 58 (3d Cir. 1986).

**B.      Review Of The Commissioner's Decision**

Plaintiff contends that the ALJ erred for the following reasons: (1) the ALJ failed

to address the testimony of Dr. Mylod that plaintiff met or equaled listings 1.04 and 1.08; (2) the

ALJ's RFC determination was not supported by substantial evidence; and (3) the ALJ failed to

evaluate properly plaintiff's complaints of pain.

1.      Step Three

Plaintiff argues that the ALJ committed error by failing to address the opinion of

Dr. Albert Mylod, who, plaintiff claims, testified at the February 7, 2006 hearing before the ALJ

that plaintiff met listings 1.04 and 1.08 and was therefore presumptively disabled.[3]  Plaintiff

contends that this runs afoul of the Third Circuit's requirement that the ALJ "give some

indication of the evidence which he rejects and his reason(s) for discounting such evidence."

*Burnett v. Comm'r*, 220 F.3d 112, 121 (3d Cir. 2000) (citing *Cotter v. Harris*, 642 F.2d 700, 705

(3d Cir. 1981)).  The ALJ did not mention Dr. Mylod's testimony in his March 4, 2009 opinion.

---

[3]      Dr. Mylod testified as an expert for plaintiff at the February 7, 2006 hearing before ALJ O'Leary.  He had not personally examined plaintiff.  He opined that plaintiff had "a restricted RFC" but that, with respect to plaintiff's various surgical procedures, it would be a "stretch" to consider him for listing 1.08.  Dr. Mylod testified that at that time plaintiff would be unable to engage in any activity for a six- to eight-hour day and was therefore completely disabled.  (Tr. 182-88.)

10

In his March 1, 2006 opinion, the ALJ discounted Dr. Mylod's testimony on the grounds that it was inconsistent with the opinions of Dr. Kopacz, plaintiff's treating physician.

As Judge Greenaway recognized in his September 5, 2008 opinion, plaintiff misrepresents the testimony of Dr. Mylod, who opined that plaintiff did *not* equal listing 1.08. (Tr. 185.)  "Dr. Mylod's testimony actually belies Plaintiff's assertion that listing 1.08 pertains to him."  *Gomez v. Comm'r*, 06-4685, 2008 WL 4186902, at *10 (D.N.J. Sept. 5, 2008).  Dr. Mylod said nothing whatsoever about listing 1.04.  Thus, the testimony was not pertinent or probative of whether plaintiff met a listing.  Whereas "an ALJ may not reject pertinent or probative evidence without explanation," the ALJ need not "cite all evidence a claimant presents, including evidence that is irrelevant to [his] case."  *Johnson v. Comm'r*, 529 F.3d 198, 204 (3d Cir. 2008).  Since Dr. Mylod never opined that plaintiff's impairment met the requirements of a listing, it was not error for the ALJ to omit to explain whether he accepted or rejected that testimony in reaching his step three determination.

Substantial evidence supports the ALJ's step three determination.  Judge Greenaway remanded the case in part due to the ALJ's failure in his March 1, 2006 opinion to articulate why he identified listing 1.04(c) as the relevant listing.  The ALJ specified in his March 4, 2009 opinion that he compared plaintiff's impairment (lumbar disc herniation) with all subparts of listing 1.04 (disorders of the spine).[4]  The ALJ concluded that the medical evidence

---

[4]        Listing 1.04 provides, "***Disorders of the spine*** (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord. With:

A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle

showed no indication of (a) nerve root compression, (b) spinal arachnoiditis, or (c) lumbar spinal stenosis accompanied by a failure to ambulate effectively. In support of his conclusion, the ALJ cited the reports of Dr. Kopacz, plaintiff's treating physician, and he noted that plaintiff had full strength in his lower extremities and could walk without an assistive device, drive, and attend school.

Plaintiff has not identified in his brief any medical evidence that he did, in fact, suffer from any of the conditions enumerated in 1.04 or another listing, as it was his burden to do. Instead, he rests his entire argument on the ALJ's failure to address the testimony of Dr. Mylod. Moreover, the record contains no diagnoses of nerve root compression or spinal arachnoiditis. Although Drs. McCormick and Dorsky diagnosed plaintiff with spinal stenosis, plaintiff has been able to ambulate without an assistive device at all relevant times.[5] Consequently, the Commissioner's step three determination is affirmed.

———————————

weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine);

or

B. Spinal arachnoiditis, confirmed by an operative note or pathology report of tissue biopsy, or by appropriate medically acceptable imaging, manifested by severe burning or painful dysesthesia, resulting in the need for changes in position or posture more than once every 2 hours;

or

C. Lumbar spinal stenosis resulting in pseudoclaudication, established by findings on appropriate medically acceptable imaging, manifested by chronic nonradicular pain and weakness, and resulting in inability to ambulate effectively, as defined in 1.00B2b."

[5] Listing 1.00(B)(2)(b) provides, "Ineffective ambulation is defined generally as having insufficient lower extremity functioning ... to permit independent ambulation without the use of a hand-held assistive device(s) that limits the functioning of both upper extremities."

2.      Residual Functional Capacity

Plaintiff contends that the ALJ failed to explain the evidentiary basis for his

determination that plaintiff retained the RFC to perform the full range of sedentary work, in

violation of the Third Circuit's holding in *Cotter*.  Specifically, he argues that the ALJ ignored

the testimony of Dr. Mylod, who testified at the February 7, 2006 hearing that plaintiff was

unable to perform sedentary work.  (Tr. 186.)  This argument is without merit.

The ALJ did not mention the testimony Dr. Mylod in his March 4, 2009 opinion.[6]

Dr. Mylod testified that plaintiff could not stand for a total of two hours in a work day.  (Tr. 187.)

Although plaintiff had to stand for two hours at a time in his chemistry lab at school, Dr. Mylod

clarified that plaintiff was "only doing it because he has to in order to stay in school but if he had

his choice I'm sure he wouldn't stand..." *Id.*  Dr. Mylod further testified that plaintiff could not

sit for six to eight hours in a workday.

The ALJ explained in his March 4, 2009 opinion that he gave controlling weight

to the assessments of plaintiff's treating physician, Dr. Kopacz, finding them to be well

supported and not inconsistent with the other evidence of record.  That is in accordance with the

regulations. *See* 20 C.F.R. § 404.1527(d)(2) ("If we find that a treating source's opinion on the

issue(s) of the nature and severity of your impairment(s) is well-supported by medically

acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other

substantial evidence in your case record, we will give it controlling weight.").  Dr. Kopacz

---

[6]      In his March 1, 2006 opinion, the ALJ had discounted Dr. Mylod's testimony as
inconsistent with the record, particularly with the assessments of plaintiff's treating physician,
Dr. Kopacz.  Dr. Mylod never examined plaintiff; his testimony was based on a review of the
record.  The ALJ also noted that Dr. Mylod was a paid expert on plaintiff's behalf.  (Tr. 18.)

opined as early as August 16, 2004 that plaintiff could perform sedentary work.  (*See* Tr. 107,

312.)  The ALJ accorded the September 14, 2004 and March 27, 2007 reports of state agency

physicians and the August 2004 physical therapy report by Mr. O'Kay great weight, finding them

to be well supported and not inconsistent with the assessments of Dr. Kopacz.  All three reports

support the conclusion that plaintiff had the RFC to perform sedentary work, including the ability

to sit for about 6 hours in an eight-hour workday and stand for at least 2 hours.  The ALJ gave

minimal weight to Dr. Horwitz's report, which was prepared for the purpose of plaintiff's

worker's compensation case, for two reasons: 1) the standards for disability in worker's

compensation cases are different from Social Security; and 2) doctors who perform worker's

compensation exams are known to be biased in favor of either the claimant or the insurance

company, depending on who retained them.  (Tr. 210-11.)

   The ALJ's March 4, 2009 opinion is sufficient to permit the Court to

meaningfully review the Commissioner's final decision, since the ALJ gave "some indication of

the evidence which he reject[ed] and his reason(s) for discounting such evidence."  *Burnett*, 220

F.3d at 121.  As the ALJ had explained in his prior opinion,[7] he found that Dr. Mylod's testimony

conflicted with the assessments of Dr. Kopacz, to which the ALJ gave controlling weight in

accordance with the regulations.  Dr. Kopacz opined that plaintiff could perform sedentary work.

Dr. Mylod's testimony also conflicted with the RFC assessments of the state agency physicians,

to which the ALJ gave great weight.  Consequently, substantial evidence supports the ALJ's

---

   [7]  The ALJ's prior opinion was not vacated by Judge Greenaway's September 5,
2008 remand order.  Though not the final decision of the Commissioner, it is part of the record
and has aided the Court in its review of the ALJ's March 4, 2009 opinion.

decision not to credit Dr. Mylod's opinion testimony.[8]

### 3.    Subjective Complaints of Pain

Plaintiff contends that the ALJ erred by failing to properly consider his subjective complaints of pain.  The ALJ "must give serious consideration to a claimant's subjective assertions of pain." *Welch v. Heckler*, 808 F.2d 264, 270 (3d Cir. 1986).  An individual's subjective complaints do not alone establish disability.  There must be a medically determinable impairment that could reasonably be expected to produce pain or other symptoms.  20 C.F.R. §§ 404.1529(b) and 416.929(b).   In addition, the duty of the ALJ includes making credibility determinations of witness testimony.  *Weir v. Heckler*, 734 F.2d 955, 961-62 (3d Cir. 1984).  "Once an ALJ concludes that a medical impairment that could reasonably cause the alleged symptoms exists, he or she must evaluate the intensity and persistence of the pain or symptom, and the extent to which it affects the individual's ability to work.  This obviously requires the ALJ to determine the extent to which a claimant is accurately stating the degree of pain or the extent to which he or she is disabled by it." *Hartranft v. Apfel*, 181 F.3d 358, 362 (3d Cir. 1999); *see also Brown v. Schweiker,* 562 F. Supp. 284, 287 (E.D. Pa. 1983) ("It is well-established that the ALJ has discretion to evaluate the credibility of a claimant and to arrive at an independent judgment, in light of medical findings and other evidence, regarding the true extent of the pain

---

[8]    Although Dr. Potashnik opined that plaintiff was restricted in activities requiring "prolonged sitting," that does not mean that plaintiff was unable to perform sedentary work, which is defined as a job requiring that an individual be able to sit for 6 hours total in an 8-hour workday, not 6 hours continuously. *See  Milano v. Comm'r*, 152 F. App'x 166, 169-70 (3d Cir. 2005).  Two state agency physicians specifically found that plaintiff could sit for about 6 hours in an 8-hour workday.  (Tr. 118-25, 335-42.)  "State agency medical and psychological consultants ... are highly qualified physicians and psychologists who are also experts in Social Security disability evaluation." *Milano*, 152 F. App'x at 170 n.7 (quoting 20 C.F.R. § 404.1527(f)).  Dr. Potashnik's finding is not inconsistent with the ALJ's RFC determination.

alleged by the claimant.") (quotations omitted).

The objective medical evidence shows plaintiff has herniated discs in the lumbar region of his back.  The ALJ concluded that this condition could reasonably be expected to cause the alleged pain symptoms, but that the plaintiff's statements concerning the intensity, persistence and limiting effects of these symptoms were not credible to the extent they were inconsistent with the ALJ's RFC determination.  Substantial evidence supports this conclusion.

Although plaintiff clearly suffered from back pain during the period of alleged disability, certain medical evidence contradicts plaintiff's claims regarding the extent and disabling effect of his pain.  Dr. Dorsky's April 2006 report noted "multiple examples of both exaggerated pain as well as non-organic findings." (Tr. 288.)  Dr. Glushakow found in February 2007 that several of plaintiff's complaints of pain were non-organic.  (Tr. 331-32.)  Plaintiff's August 2004 functional capacity assessment by Mr. O'Kay was qualified as "conditionally valid" due to plaintiff's sub-maximal effort.  (Tr. 100, 107.)  Dr. Kopacz opined in August 2004 that plaintiff was "able to pursue sedentary activity" and in October 2006 that plaintiff's statement that he could not perform sedentary work was not "directly correct" given plaintiff's pain symptoms and ability to attend school.  (Tr. 107, 312.)  This evidence undermines the credibility of plaintiff's claim that his back pain was disabling.

In assessing plaintiff's credibility, the ALJ can consider such factors as the claimant's daily activities.  20 C.F.R. §§ 404.1529(c)(3) and 416.929(c)(3).  The ALJ noted that plaintiff attended school full-time from January 2005 through March 2008 with no ADA accommodations.  Plaintiff was able to drive himself to class.  (Tr. 185.)  Plaintiff began working as a respiratory therapist a few months after graduation.  (Tr. 210.)  Although plaintiff's efforts

to retrain himself to re-enter the workforce are laudable, that evidence further undermines plaintiff's testimony regarding the severity of his symptoms.  Finally, the ALJ did credit plaintiff's complaints of pain to the extent that they were consistent with his RFC determination, which was that plaintiff was limited to sedentary activity.  Thus, it cannot be said in this case that the ALJ did not give plaintiff's complaints of pain appropriate consideration.  *See Simmonds*, 807 F.2d at 58.  Substantial evidence supports the ALJ's determination that plaintiff's testimony was not credible to the extent it conflicted with his RFC determination.

## V.      CONCLUSION & ORDER

For the foregoing reasons, the decision of the Commissioner will be affirmed.  An appropriate order concluding the merits of this case will issue.

However, the Court's records do not show that plaintiff's counsel, James Langton, Esq. & Abraham Alter, Esq., complied with the Court's August 31, 2010 Order in this case, which, inter alia, imposed a fine of $500 per day for failure to file a timely brief and required counsel to file certifications affirming their understanding of and ability to use the Court's Electronic Case Filing system and averring that they have advised their clients in newly filed cases assigned to this Court that the case may be dismissed if Mr. Alter fails to abide by Court rules.  Accordingly, it is hereby **ORDERED** that on or before **Wednesday, December 29, 2010**, plaintiff's counsel shall either file proof that they have complied with the Court's Order or show cause in writing why they should not be held in contempt for their failure to comply with the Order.

   **/s/ Faith S. Hochberg**
   Hon. Faith S. Hochberg, U.S.D.J.

17